UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

8:13-cv-02811-T-30TGW

SHANNON L. BILOTTA,

      Plaintiff,

vs.

CITIZENS INFORMATION ASSOCIATES, LLC;
ARTHUR D'ANTONIO III; MUGLY MEDIA, INC.;
KYLE PRALL; RYAN RUSSELL; STAR NINE
VENTURES, INC.; MAURICIO VILLASUSO;
VIRTUAL POST SOLUTIONS, INC.; WHOS
ARRESTED LLC; CRAIG WIGGEN,

      Defendants.

_____/

## CITIZENS INFORMATION ASSOCIATES, LLC'S
## MOTION FOR SANCTIONS AGAINST CLARK  & MARTINO, P.A.

Defendant Citizens Information Associates, LLC ("CIA"), by and through their undersigned counsel, and pursuant to Fed. R. Civ. P. 30(g)(1) and 37, hereby submits this Motion for Sanctions Against Clark & Martino, P.A. ("Clark Martino"), and in support thereof states as follows:

### I.      Background

Plaintiff filed this cause of action against CIA and eight named defendants on August 30, 2013 in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida. [DE 1-1].  CIA was served with the complaint on October 7, 2013, and removed it to the Federal District Court of the Middle District of Florida on November 1, 2013. [DE 1].   On November 5, 2013 the Court issued a Related Case Order and Track Two Notice. [DE 4].

On November 21, 2013 Plaintiff filed a Motion for Extension of Time for Class Certification. [DE 13].  Specifically, Plaintiff sought an extension until March 25, 2014.  [DE 13,

1

p.3]  Further, Plaintiff stated that she "intends to propose bifurcated discovery in advance of class certification."  [DE 13, ¶7].  This Court granted an extension, giving Plaintiff until January 28, 2014 to file her motion for class certification.  [DE 16, p.2].

Pursuant to local rules, the parties conferred and submitted a Case Management Report on December 10, 2013.  [DE 19].  As Plaintiff had stated in her Motion for Extension of Time for Class Certification, she did "propose bifurcated discovery." [DE 13, ¶7].  Specifically, the Case Management Report states:

> **As referenced in the preliminary statement, the parties believe that discovery should be conducted in two phases: in the first, discovery shall be limited to class certification discovery; in the second, the parties shall engage in merits discovery. The parties respectfully suggest that the merits discovery phase not begin until after the Court has ruled on a motion to certify a class.  This approach avoids the difficulty of conducting merits discovery, and even possibly preparing for trial, at a time when the parties may not know whether the scope of the litigation is as a class action or as an individual case.  The parties' proposed schedule relating to this proposed bifurcated proceeding is submitted herein.**
>
> **The parties will endeavor to work cooperatively to determine whether issues are class or merits related before bringing potential disputes in that regard to the attention of the Court.**

[DE 19, p.6, emphasis in original].  The Court issued a Case Management and Scheduling Order on December 19, 2013 which "**direct[s]** [the parties] to meet the agreed upon terms and time limits set forth in their Case Management Report."  [DE 26, ¶1](emphasis in original).  With that understanding in mind, undersigned counsel proceeded with setting depositions and engaging in discovery.

## II.  Facts

1.     On December 4, 2013, Plaintiff sent her first Notice of Taking Videotaped Deposition *Duces Tecum*.  In her transmittal letter for the Deposition Notice, Plaintiff suggested four dates for the deposition: January 6, 7, 8, or 9, 2013.

2.      On December 11, 2013, Plaintiff sent an email notifying CIA for the first time that "the depo will be conducted by videoteleconference [*sic*]," requiring CIA to locate a facility that could make such accommodations.  A copy of the "scheduling emails" are attached hereto as **Composite Exhibit "A."**

3.      CIA's counsel responded within minutes, with CIA's Attorney Winchester calling Plaintiff's counsel and, unable to reach him, sending a lengthy email and informing Plaintiff that we would be able to confirm a deposition date and location the following day.  A copy of the Declaration of Lance Winchester is attached hereto as **Exhibit "B."**

4.      Plaintiff's counsel responded, and a conference call was set up for the following date, December 12, 2013. *See* **Comp. Ex. "A."**   The conference call was attended by Attorneys Winchester, Centrich and Gillman for CIA, and Attorney Crist representing the Plaintiff. Declaration of Winchester at ¶7.

5.      During the call, CIA agreed to a deposition on January 8, 2014 in Austin, Texas. *Id.* at ¶8. Plaintiff's counsel was made aware of scheduling difficulties, as Kyle Prall, CIA's corporate representative, did not live in Austin, and either Mr. Prall or his attorneys would have to travel for the deposition. *Id.*

6.      Further, CIA's counsel agreed to allow Plaintiff to take the deposition by video teleconference, thereby reducing her costs.  *Id.* at ¶9.  Mr. Crist stated that he would take the video teleconference wherever the deponent was located, and CIA decided to conduct the deposition in Austin to reduce the cost for all parties. *Id.*

7.      CIA's counsel also raised its concerns that Plaintiff's document production requests and areas of testimony were extremely voluminous in nature and some of the requests went beyond

the agreed scope of discovery.  *Id.* at ¶10.  Plaintiff's counsel responded that he did not have the time to go through the requests one by one, and to just respond as we feel is appropriate.  *Id.*

8.      On December 19, 2013, Plaintiff sent her Second Amended Notice of Deposition Duces Tecum.  A copy of the Second Amended Notice of Deposition Duces Tecum is attached hereto as **Exhibit "C."**

9.      On December 18, 2013, CIA requested dates to depose Plaintiff, seeking her availability on January 9, 10, 13 or 14, 2014.  A copy of the "Plaintiff's deposition emails" is attached hereto as **Composite Exhibit "D."**  On December 27, 2013, Plaintiff's counsel's office informed CIA that she was unavailable on January 13 or 14, 2014.  *Id.* at p.1.  Later that day, Attorney Crist informed CIA that Plaintiff was unavailable on January 9 or 10, 2013.  *Id.* at p.3.

10.      On December 27, 2013 Attorney Winchester responded seeking "all dates she is available Monday through Friday during regular working hours before [January 14]." *Id.* at p.3.

11.      On December 30, 2013, Plaintiff's counsel informed CIA that he "could offer dates in February" and that he "would be willing to agree to a joint or unopposed motion to extend those deadlines."  *Id.* at p.1.  On January 6, 2013 CIA had a database delivered to Plaintiff containing records responsive to several of Plaintiff's request.  Winchester Decl. ¶16.  In addition, CIA provided digital copies of other documents in PDF format responsive to Plaintiff's requests, as well as objections to requests that sought information beyond the scope of discovery. *Id.*; A copy of Defendant's Responses to Plaintiff's Requests is attached hereto as **Exhibit "E."**

12.      Also around noon on January 6, 2014, Attorney Gillman first tried to contact Mr. Crist regarding the contents of the hard drive and other issues surrounding the deposition.  A copy of the Declaration of Paige Gillman, Esq. is attached hereto as **Exhibit "F."**

13.     On January 7, 2013, Attorneys Centrich and Winchester spent the bulk of the day with Kyle Prall, CIA corporate representative, reviewing documents and preparing for the deposition. Winchester Decl. ¶17.

14.     At approximately 2:30 p.m. Eastern Time Attorney Gillman received a call back from Mr. Crist regarding her message about the hard drive.  Gillman Decl. ¶6.  At that time it became clear that Mr. Crist had not even opened the box to investigate what had arrived for the deposition and thought the box had duplicates of documents he received via email.  Gillman Decl. ¶7.

15.     After Attorney Gillman explained the nature of the material on the hard drive (the Florida mugshots Mr. Crist requested), Mr. Crist stated that he was going to cancel the deposition because undersigned counsel had objected to some of his requests.  Gillman Decl. ¶8.  Mr. Crist also informed Attorney Gillman that he would not be contacting Attorneys Winchester and Centrich via telephone as it was his deposition and he could cancel it if he chose to and he was preparing for another federal trial for which he was behind.  Gillman Decl. ¶9.

16.     At approximately 3:00 p.m. Eastern Time, Attorneys Centrich and Winchester received a call from CIA's local counsel, Attorney Gillman, stating that Clark Martino intended to cancel the deposition.  Gillman Decl. ¶10.

17.     At approximately 4:53 p.m. Eastern Time, less than 24 hours prior to the deposition, Plaintiff's counsel sent a letter, via e-mail, to CIA's counsel and a notice of cancelation of the deposition.  A copy of the Letter and Notice of Cancellation is attached hereto as **Composite Exhibit G."**

18.     The letter accompanying the Notice of Cancelation attempts to justify cancelation of the deposition based on the fact that "CIA has objected to a number of [Plaintiff's] requests, and

CIA's voluminous document production, which includes a database hard drive, which [Plaintiff's counsel] received yesterday [Monday, January 6, 2014]." *Id*.

19.     Undersigned counsel attempted to confer with opposing counsel regarding this motion, but the parties were unable to confer prior to the filing of this motion.

### III.   Legal Analysis

#### A.  Clark Martino Violated Fed. R. Civ. P. 30 and 37 By Noticing the Deposition of CIA's Corporate Representative and Then Failing to Attend.

Clark Martino violated Fed. Rule. Civ. P. 30(g)(1) by failing to attend and proceed with the deposition noticed by them.  Rule 30(g)(1) provides:

> A party who, expecting a deposition to be taken, attends in person or by an attorney may recover reasonable expenses for attending, including attorney's fees, if the noticing party failed to: (1) attend and proceed with the deposition.

The facts in this instance are indisputable:

1) Clark Martino noticed the deposition of Kyle Prall, CIA's corporate representative, for January 8, 2014 at 10:00 a.m. central time.

2) Clark Martino was aware that either CIA's corporate representative, who lives in California, or CIA's counsel, located in Texas, would have to travel to accommodate the deposition request.

3) CIA's corporate counsel conferenced with Clark Martino and agreed to a video teleconference deposition, thereby minimizing the costs incurred by Clark Martino in conducting the deposition.

4) CIA minimized expenses for itself by requiring its corporate representative, the president of the company, to come to the location of its attorneys to reduce legal and travel expenses.

5) On January 6, 2013, CIA produced responsive documents and objections to requests.

6) Kyle Prall, CIA's corporate representative, flew to Austin, Texas from California on January 6, 2013 for his deposition.

7) On January 7, 2014, Clark Martino sent notice to CIA counsel at approximately 4:00 p.m. eastern time that it was canceling the deposition. Clark Martino attempted no phone calls to CIA's counsel to attempt to resolve any issue before unilaterally cancelling the deposition.

8) Clark Martino failed to attend the deposition they had noticed.

9) CIA and counsel for CIA incurred expenses and attorney's fees as a result of the deposition notice and attendance at the deposition.

Again, Clark Martino violated basic discovery rules and professional courtesy resulting in a waste of litigation resources and general delay to the detriment of CIA. CIA requests the Court order Clark Martino to pay counsel for CIA and CIA for the expenses and attorney's fees incurred to travel to and attend this deposition and bring this motion.

### B.  Clark Martino's Notice of Cancellation was Insufficient.

An emailed notice of cancelation, less than 24 hours prior to a deposition, is insufficient. In *Miller v. Dyadic Intern., Inc.*, the Southern District of Florida could not "find … reasonable notice" where "cancel[lation] [of] a deposition [is sent] *by email* less than 36 hours before the deposition where opposing counsel needed to fly in from out of state." 2008 WL 2116590 *2 (S.D.Fl. 2008). Here, Clark Martino cancelled the deposition less than 20 hours prior to the scheduled beginning.  The court further noted that it "would be reasonable to assume that [the deponent] would be preparing to travel … for the deposition at the time the email was sent." *Id.* In fact, CIA's corporate representative had already arrived in Texas for the deposition. Due to CIA's accommodation to Clark Martino in allowing a video teleconference, thereby saving Clark Martino travel expenses, only CIA, its corporate representative, and its counsel were subjected to

7

the costs of travel, preparation and the inconvenience of the last minute cancelation.   In addition, Clark Martino did not even have the courtesy to call CIA's corporate counsel to notify them of any issue.   The Court in *Miller* granted attorney's fees and travel costs to the moving party as a result of the cancelation of the deposition.  *Id.* at *3.

### C.  Clark Martino's Justification for Cancellation is Without Merit.

Clark Martino argues that it is justified in cancelling the deposition for two contradictory reasons. First, Clark Martino argues that since "CIA objected to a number of [its] requests" it would "need additional time in which to resolve CIA's objections."  *See* **Comp. Ex. "G."**  Next, Clark Martino argues that "CIA's voluminous document production, which includes a database hard drive" will need to be reviewed "before [Clark Martino] can have an effective deposition of CIA's corporate representative."  *Id.* As noted, CIA's counsel attempted to discuss these very issues with Clark Martino in December, and was told by Attorney Crist that he was too busy for such discussion.  Winchester Decl. at ¶10.  Clark Martino also fails to note the conflict in their alleged issues with the production – how would Clark Martino have had time to review any additional documents CIA would have produced had it not objected when Clark Martino didn't have the time to review the documents produced?

### 1.  CIA's Objections Were Justified.

CIA responded to Plaintiff's requests with over 700 pages of responsive documents, and an external computer hard drive containing approximately 3,800,000 arrest records from Florida. Winchester Decl. at ¶16.  CIA's objection to a number of requests was due to the fact that Plaintiff's request went beyond the scope of the primary phase of discovery.  As provided in the Case Management Report, "the parties believe that discovery should be conducted in two phases: in the first, discovery shall be limited to class certification discovery."  [DE 19, p.6]   CIA

objected that Plaintiff sought documents beyond that limited scope for several requests, yet still provided documents which were responsive within the scope of this discovery phase, including:

> **Request 11:** Documents regarding any relationship between CIA and Star Nine Ventures, Inc., including any contracts or communications.

> **Request 12:** Documents regarding any relationship between CIA and Kyle Prall, including any contracts or communications.

> **Request 13:** Documents regarding any relationship between CIA and any other defendants in this case, including any contracts or communications.

For some requests, CIA objected that Plaintiff sought documents beyond that limited scope for several requests and provided no documents, including:

> **Request 15:** Documents regarding any relationship between CIA and any third party that advertises, markets, or otherwise causes to be displayed any products or services on (a) bustedmugshots.com or (b) mugshotsonline.com, including any contracts or communications.

> **Request 16:** Documents regarding any relationship between CIA and any third party that advertises, markets, or otherwise causes to be displayed any products or services on any other websites, including any contracts or communications.

> **Request 17:** Documents reflecting the receipt of any revenue from any third parties as a result of any advertising, marketing, or otherwise causing to be displayed any products or services on (a) bustedmugshots.com or (b) mugshotsonline.com.

> **Request 18:** Documents reflecting the receipt of any revenue from any third parties as a result of any advertising, marketing, or otherwise causing to be displayed any products or services on any other websites.

> **Request 19:** Documents reflecting the receipt of any revenue from any third parties in connection with the removal of any mugshots or other identifying information from (a) bustedmugshots.com or (b) mugshotsonline.com.

> **Request 20:** Documents reflecting the receipt of any revenue from any third parties in connection with the removal of any mugshots or other identifying information from any other websites.

Requests 15 and 16 seek essentially the same information, requesting documents pertaining to all business relationships it has with its advertising customers. This information cannot have any relevance to class certification, and further has no relevance to Plaintiff's

surviving claims.  Requests 17 through 20 seek information regarding CIA's revenue – requests more appropriate for post-judgment discovery.  These requests are nothing more than a fishing expedition by Plaintiff to determine CIA's financial position.  They have no relevance to class certification, and no relevance to the merits of Plaintiff's claims.  Plaintiff is entitled to discovery to prove her damages (at the later phase two of discovery), but not discovery clearly aimed at CIA's ability to pay any potential judgment.

It should also be noted that parties frequently object to production requests.  In fact, it would be atypical for a request as substantial as Plaintiff makes be responded to without any objection, especially in light of the fact that CIA's counsel attempted to raise the issue with Clark Martino nearly a month prior to the deposition.

### 2.  CIA Produced the Documents Plaintiff Requested.

Next, Clark Martino complains of the "voluminous document production."  *See* **Comp. Ex. "G."**   Again, Attorney Crist was forewarned that this request would result in a massive amount of production. Winchester Decl. at ¶10.

Plaintiff's document request includes:

> **Request 7:** All summaries, statistical reports, <u>data compilations</u>, reports, documents, or otherwise that identify the following:
>
>> a.  Membership of the "Class" as alleged in Plaintiff's First Amended Class Action Complaint for the applicable period.

*See* **Ex. "E."** (emphasis added).  Plaintiff seems disappointed by the "voluminous document production," and specifically the "database hard drive," but it is precisely what Plaintiff requested.  Further, the size should not surprise Plaintiff.  In its Notice of Removal, CIA explicitly stated that it published at that time "3,800,212 records of Florida residents." [DE 1, ¶11].

Plaintiff's complaint that it needs time to review these documents prior to deposing CIA's corporate representative is without merit.  In *Root Bros. Farms v. Mak*, the Southern District of NY faced a similar claim, where the party requesting the deposition cancelled days before the scheduled deposition, on the grounds that the producing party "did not produce documents necessary for the deposition until a few days before the deposition."  2007 WL 2789481 *7 (S.D.NY 2007).  The Court found that argument "unpersuasive" noting that counsel for the deposed party "had no way of knowing how [the requesting party] would conduct the deposition or what documents he would use." *Id.*  Further, "it was incumbent upon [the deposing party's counsel] to provide timely notice" if he "was not in a position to proceed with the deposition."  By providing notice less than 24 hours prior to an out-of-town deposition, Clark Martino was fully aware that CIA would have traveled to the deposition location and begun costly preparations.

Similarly, the Northern District of Illinois has ruled that where a deposing party "may have very well believed she was prejudiced by the late production" of documents, "at the very least, counsel should have started the deposition on the topics she was prepared for." *Barrett v. Brian Bemis Auto World*, 230 F.R.D. 535, 537 (N.D.Ill. 2005).  As a result for the cancellation, the court found "that reasonable sanctions under Rule 30(g)(1) [were] warranted." *Id.*

CIA was not obligated to produce the documents prior to the deposition.  CIA did so as a courtesy, one that was returned by an 11th hour cancelation of a deposition requiring the president of the company to travel to Texas from California.  Clark Martino should be sanctioned for its actions in violation of Rule 30(g)(1) and CIA and its counsel should be reimbursed for its costs and fees.

**D.  Clark Martino's Cancellation Intended to Delay.**

Clark Martino's actions are in bad faith and any extension sought is solely for the purpose of delay.  On December 18, 2013, CIA requested dates from Clark Martino to depose the named Plaintiff in this case.  On December 27, 2013 Clark Martino responded claiming none of the four requested dates were available.  Later that day, CIA's counsel requested any dates she was available during general business hours prior to January 14, 2014, excluding the New Year Holiday.  Clark Martino responded on December 30, 2013, saying it "could offer dates in February," a full two weeks after the discovery deadline.  No explanation was given as to why Plaintiff could not be made available anytime during business hours during the entire month of January.  In what seems to indicate the true purpose of lack of availability, Clark Martino offered to file a joint or unopposed motion extending the discovery and the certification deadline.

In the letter cancelling the deposition, Clark Martino states "as I discussed in two prior emails, we intend to file a motion seeking to extend the deadlines to complete class certification discovery and file the motion for class certification." *See* **Comp. Ex. "B."**  This misstates the emails.  Clark Martino represented a willingness to file a joint motion to extend <u>if CIA needed the extra time to conduct a deposition of Plaintiff</u>. *See* **Comp. Ex. "A.".**  CIA has made no such request.

Clearly, Clark Martino is seeking to delay the class certification process.  Plaintiff propounded voluminous discovery requests on CIA, and CIA has produced responsive documents within the appropriate current phase of discovery.  Clark Martino has been seeking agreement for an extension of these deadlines for over a week, and cannot now attempt to justify an extension based on the document production made at its request and a deposition they chose to cancel.

### E. Clark Martino's Conduct Has Resulted in Unnecessary Costs and Legal Fees.

As a result of Clark Martino's last minute cancellation of its scheduled deposition, CIA has incurred the following costs:

| | |
|---|---|
| Airfare: | $399.00 |
| Hotel: | $80.00 |
| Cab Fare: | $30.00 |
| Dining: | $189.56 |

A copy of the Declaration of Kyle Prall is attached hereto as **Exhibit "H."**.

In addition, CIA has incurred legal fees in preparing for the deposition, as well as preparing this motion. Lance Winchester spent 11.25 hours and has a billing rate of $375/hr. Winchester Declaration at ¶20. Joseph Centrich spent 15.4 hours and has a billing rate of $225/hr. Centrich Declaration ¶3. A copy of the Declaration of Joseph Centrich, Esq. is attached hereto as **Exhibit "I."** Paige Gillman spent 7.9 hours and has a billing rate of $250/hr. Gillman Decl. ¶11. The total legal fees expended preparing for the deposition and this motion is $9,658.75.

WHEREFORE, Defendant, Citizens Information Associates, LLC, respectfully requests this Court enter an Order: (1) sanctions in the amount of $10,357.31 for failing to properly cancel or attend the deposition of corporate representative Kyle Prall on January 8, 2014; (2) to deny any request by Plaintiff to extend the time to certify the class or to complete class discovery; and (3) for any further relief this Court deems equitable and just.

13

Dated: January 10, 2014.

                         Respectfully Submitted,

                         Mrachek, Fitzgerald, Rose, Konopka & Dow, P.A.
                         1000 S.E. Monterey Commons Blvd., Suite 306
                         Stuart, Florida 34996
                         Telephone (772) 221-7757
                         Facsimile (772) 781-6886

By:   _/s/ Scott Konopka
                         SCOTT KONOPKA, ESQUIRE *(trial counsel)*
                         Florida Bar No. 080489
                         Email: skonopka@mrachek-law.com
                         PAIGE GILLMAN, ESQUIRE *(trial counsel)*
                         Florida Bar No. 58967
                         Email: pgillman@mrachek-law.com
                         JOSEPH F. CENTRICH, ESQUIRE *(pro hac vice)*
                         Bar No. 24055283 (TX)
                         LANCE C. WINCHESTER, ESQUIRE *(pro hac vice)*
                         Bar. No. 21754300 (TX)
                         Clausen & Centrich, PLLC
                         2002 Timberloch Place, Suite 200
                         The Woodlands, Texas  77380
                         Tel:  (281) 210-0140
                         Fax: (866) 901-7829
                         Email: jcentrich@cpctexaslaw.com
                                  lance@lancewlaw.com

## <u>CERTIFICATE OF SERVICE</u>

WE HEREBY CERTIFY that on the 10th day of January 2014, we electronically filed the foregoing document with the Clerk of the Court via CM/ECF.  We also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission or Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filings.

Respectfully submitted,

Mrachek, Fitzgerald, Rose, Konopka, & Dow, P.A.
1000 S.E. Monterey Commons Blvd., Suite 306
Stuart, Florida 34996
Tel (772) 221-7757 / Fax  (772) 781-6886

By:  _____/s/ Scott Konopka
SCOTT KONOPKA, ESQ.
Florida Bar No. 080489
E-mail: skonopka@mrachek-law.com

## SERVICE LIST

### SHANNON R. BILOTTA
vs.
### CITIZENS INFORMATION ASSOCIATES, LLC, ET AL.

### CASE NO: 8:13-cv-2811-T-30TGW/Judge James S. Moody, Jr.
### United States District Court, Middle District of Florida

| | |
|---|---|
| **J. Daniel Clark, Esq.**<br>Email: dclark@clarkmartino.com<br>**Matthew A. Crist, Esq,**<br>Email: mcrist@clarkmartino.com<br>Clark & Martino, P.A.<br>3407 West Kennedy Blvd.<br>Tampa, FL 33609<br>Tel. (813) 879-0700/Fax (813) 879-5498<br>*Attorneys for Plaintiff* | **Kenneth G. Turkel, Esq.**<br>Email: kturkel@bajocuva.com<br>**Brad F. Barrios, Esq.**<br>Email: brad.barrios@bajocuva.com<br>Bajo Cuva Cohen & Turkel, P.A.<br>100 N. Tampa Street, Suite 1900<br>Tampa, FL 33602<br>Tel. (813) 443-2199/Fax (813) 443-2193<br>*Attorneys for Plaintiff* |
| **Majid Vasigh, Esq.**<br>Email: mvasigh@gmail.com<br>Miller Vasi, P.A.<br>1228 E. 7th Avenue<br>Tampa, FL 33605<br>Tel. (813) 983-7852/Fax (813) 864-7092<br>*Attorneys for Plaintiff* | **Scott Konopka, Esq.**<br>Email: skonopka@mrachek-law.com<br>**Paige H. Gillman, Esq.**<br>Email: pgillman@mrachek-law.com<br>Mrachek, Fitzgerald, Rose, Konopka<br>& Dow, P.A.<br>1000 Monterey Commons Blvd., Suite 306<br>Stuart, FL 34996<br>Tel. (772) 221-7757/Fax (772) 781-6886<br>*Attorneys for Defendants* |
| **Joseph F. Centrich, Esq.** (*pro hac vice*)<br>jcentrich@cpctexaslaw.com<br>Bar No. 24055283 (TX)<br>**Lance C. Winchester, Esq.** (*pro hac vice*)<br>lance@lancewlaw.com<br>Bar. No. 21754300 (TX)<br>Clausen & Centrich, PLLC<br>2002 Timberloch Place, Suite 200<br>The Woodlands, Texas  77380<br>Tel:  (281) 210-0140/ Fax: (866) 901-7829<br>*Attorneys for Defendants* | **Joshua G. Jones, Esquire** (*pro hac vice*)<br>Email: jjones@reedscardino.com<br>Reed & Scardino LLP<br>301 Congress Ave., Suite 1250<br>Austin, TX 78701<br>Tel. (512) 615-5747<br>*Attorney for Defendant, Arthur D'Antonio, III* |